# CHARLESTON.

THE CHILHOWIE LUMBER COMPANY *v.* J. C. & W. B. LANCE & COMPANY.

Submitted January 14, 1902.   Decided March 1, 1902.

1. ATTACHMENT.—*Non-resident—Appearance.*
       In an action at law against a non-resident, in which an attachment has been sued out, if the absent defendant appears generally to the action, there may be a personal judgment only against him, or a personal judgment and an order and judgment subjecting the attached property, although there is no order of publication in the case.   (pp. 640, 641).

2. WRIT OF ERROR.—*Record—Jurisdictional Facts.*
       Although a writ of error lies generally only for errors of law apparent in the record, if a court proceed in a cause, upon the erroneous assumption or finding of some preliminary fact, essential to its exercise of jurisdiction in the premises, as when there is want of such proceeding as is necessary to bring the party into court and make him a party to the record, its finding in respect to such matter of fact is reviewable on such writ. (p. 641.)

3. APPEARANCE BY ATTORNEY UNAUTHORIZED.
       The action of the court below in overruling a motion to set aside a judgment before the expiration of the term at which the judgment was rendered on the ground that there was an unauthorized appearance by attorney as to the judgment debtor, when several orders entered in the case at former terms show a general appearance for him by attorney, will not be disturbed by the appellate court unless the motion was supported by a clear preponderance of evidence.   (pp. 642, 643).

Appeal from Circuit Court, Mingo County. Action by the Chilhowie Lumber Co. against J. C. & W. B. Lance & Co. Judgment for plaintiffs. Defendants bring error.

*Affirmed.*

ROBERT H. HOYLE, for appellants.

SHEPPARD & GOODYKOONTZ, for appellee.

POFFENBARGER, JUDGE:

On the 9th day of October, 1899, the Chilhowie Lumber Company, a corporation organized and existing under the laws of the State of Virginia, sued out of the clerk's office of the circuit court of Mingo County a summons and an order of attachment with bond, in an action of *assumpsit* against J. C. Lance and W. B. Lance, partners doing business as J. C. & W. B. Lance & Co. The summons was made returnable to November rules, 1899, but at the return day of the summons the clerk entered the following memorandum: "Papers lost at this time." On the 10th day of Jan., 1900, the court made the following order in the case:

*"The Chilhowie Lumber Company* v. *J. C. & W. B. Lance Co.—Assumpsit,* &c.   This day the plaintiff herein appeared, by counsel, and the defendant also, by counsel, Everett Leftwich, Esq., and it being conceded by the parties hereto that the papers herein have been lost, it is therefore ordered that the plaintiff have leave to supply said papers, consisting of the declaration, bill of particulars, affidavit therewith, bond for the attachment, the order of attachment, the affidavit for the attachment and the sheriff's return on said attachment orders."

On the 8th day of February, 1900, an order was made supplying the papers in the case and that order shows the appearance of all the parties as follows: "This day came the plaintiff, by Sheppard & Goodykoontz, its attorneys, and the defendants, by Everett Leftwich, their attorney." The papers supplied were the declaration and affidavit showing the amount the plaintiff is entitled to recover including principal and interest after deducting all payments, credits and set-offs made by the defendants and to which they are entitled; an affidavit for the attachment; the order of attachment and return of sheriff thereon; the account filed with the declaration; the attachment bond and

a *lis pendens* notice. The sheriff's return of the order of attachment is as follows:

"Came to hand this Nov. 9th, at 5 o'clock p. m., 1899. J. E. Peck, deputy, for N. J. Keadle, S. M. C.

Executed the within order of attachment by this day levying upon and seizing one saw-mill, planning-mill, engine, boiler, fixtures and all attachments and tools connected therewith, the property of the defendants, situate at Naugatuck in Mingo County. Given under my hand this 10th day of Nov., 1899. J. E. Peck, deputy, for N. J. Keadle, S. M. C."

On the 9th day of May, 1900, an order was entered showing that "on motion of defendants who appeared specially for that purpose," the plaintiff was required to give security for cost. On the same day, "neither party requiring a jury but waiving trial by jury and it appearing to the court from the affidavit filed with the plaintiff's declaration that the defendants are indebted to the plaintiffs in the sum of $358.54," judgment was rendered for that amount and the attached property was ordered to be sold to satisfy the judgment and the costs.

On the 14th day of May, 1900, a notice signed by J. C. Lance, by counsel, was served upon the attorneys for the plaintiff stating that said defendant would, on the 16th day of May, 1900, move the court to correct a clerical error in the orders entered in the case, on the 11th day of January, 1900, and the 8th day of February, 1900, in this, "that each of said orders shows a general appearance for all of the defendants in said cause by Everett Leftwich, whereas the said Everett Leftwich was not authorized to appear for any one except myself, and that said general appearance, as shown by said order, was a clerical misprision by the clerk and is material to the rights of the parties to this cause." On the 16th day of May, 1900, said notice was docketed and on the next day the plaintiff moved to quash the notice and return which motion the court overruled and thereupon the plaintiff denied that such errors existed, whereupon the court proceeded to try the matters of fact and law arising upon said issue and being of the opinion that there was no clerical error in the record as set forth in the notice refused to allow the record to be corrected in the manner specified in the notice and the defendant excepted to this action of the court and took five bills of exception. On the 22nd day of May, 1900, the defendant, J. C. Lance, moved the court to vacate, set aside and

annul the judgment for want of proper process, because a joint personal judgment was rendered against both defendants without service of process upon the defendant W. B. Lance or any authorized appearance by him, because there was no sufficient affidavit to support the attachment because the affidavit is not properly authenticated, because there was no order of publication and because of other errors apparent on the face of the record. The hearing of this motion was continued and the order of sale suspended until the 12th day of June, 1900, when the court overruled the motion and the defendant excepted.

On the motion to correct the record the court heard the testimony of Everett Leftwich which was to the effect that at the time the two orders complained of were entered he represented nobody in the case but J. C. Lance; that prior to that time the co-partnership existing between J. C. Lance and W. B. Lance had been dissolved, probably in December, 1899, or earlier; and that he did not know at the time the orders were entered that they showed a general appearance for both of the defendants. He was cross-examined extensively and while admitting that at the time of the hearing of said motion to correct he represented both of the defendants and had done so for a short time prior thereto and he or other members of his firm had had communication with, and transacted business for, W. B. Lance, prior to the times when said orders were entered, he adhered to his position that he did not represent W. B. Lance at the time said orders were entered. The plaintiff introduced a bill in chancery filed in the circuit court of said county by J. C. Lance and W. B. Lance, partners, about the time the judgment was taken, it seems, the purpose of which was to obtain an injunction and restrain prosecution of said action at law. On the same side the clerk of the court was called and testified that he entered the first of the two orders complained of himself and did not remember whether Mr. Leftwich was present or not, though he understood it to be a consent order. J. E. Peck, deputy sheriff, testified that he had served the summons upon one of the parties, which he did not remember, and left with him a copy for the other. Wells Goodykoontz of the firm of Sheppard & Goodkoontz testified that he prepared the order supplying the papers in the case and that while he did not remember whether Mr. Leftwich was present in the court he did recall that he or a member of his firm was present and spoke to the case. He

said that the order was shown to Mr. Leftwich in the court room. Mr. Leftwich, being called, testified that he did not see the order and that if he had seen it and known its character he would have objected to its being entered. The court also considered on that motion the orders themselves as well as other orders in the case.

Both of the defendants are non-residents of the State and the ground of attachment was their non-residence shown by affidavit. All of the proceedings for the correction of alleged errors and for vacating and setting aside the judgment were had in the name of J. C. Lance only but both parties have brought the case here on a writ of error.

The all important question is, whether there was an authorized appearance for W. B. Lance. If there was, then the failure to take an order of publication against him is immaterial, for if there had been service of process upon him such order would have been unnecessary. Code, chapter 106, section 17. There was no service of process upon him but, by appearing, he waived the service of process and consequently the order of publication. "It is a well established rule that by appearing and pleading to the action the defendant waives all defects in the process and in the service thereof. The cases go further and imply such a waiver from the defendant taking or consenting to a continuance, as fully as they do from his pleading to the action. The object of the writ is to apprise the defendant of the nature of the proceeding against him. The fact of his taking or agreeing to a continuance is evidence of his having made himself a party to the record, and of his having recognized the case as in court. It is too late for him afterwards to say that he has not been regularly brought into court." Judge Daniel in *Harvey* v. *Skipwith,* 16 Grat. 410, quoted and approved in *Mahany* v. *Kephart & Railroad Co.,* 15 W. Va. 609. This record shows three appearances by the "defendants" before the judgment was taken; *first,* in the order granting leave to supply the papers January 10, 1900; *second,* in the order supplying the papers and continuing the case February 8, 1900; and *third,* in the order suggesting the non-residence of the plaintiff and requiring security for cost May 9, 1900. On May 9, 1900, the order giving judgment for the plaintiff was entered and still there was no suggestion to the court that W. B. Lance had not appeared.

His non-appearance was not claimed in court until the 16th day of May, 1900, some days after the judgment was entered.

If both of the defendants did appear it was proper to render a personal judgment against them. "In an action at law against a non-resident, in which an attachment has been sued out, if the absent defendant does not appear in the case and has not been served with process, there should not be a personal judgment against him, but the attached effects should alone be subjected. But if he does appear to the action, for any other purpose than that above indicated, there may be a personal judgment only against him, or there may be both personal judgment and an order and judgment subjecting the attached effects." *Mahany* v. *Kephart & Railroad Co.; O'Brien* v. *Stephens,* 11 Grat. 610. Thus it appears that if the appearance entered for W. B. Lance was unauthorized the judgment is erroneous for it is a personal judgment against both of the defendants for the sum of three hundred and fifty-eight dollars and fifty-four cents for the satisfaction of which the attached property is ordered to be sold.

Whether the appearance entered for W. B. Lance was authorized or not is a question of fact and has been passed upon by the circuit court as has been shown. However, the fact is such in its nature that the action of the circuit court in passing upon it is reviewable. Powell on App. Pro. 116, after noting that the writ of error lies only for errors in law apparent in the record, says, "But there are a few instances where proceedings in error may be sustained upon error in fact as well as upon error in law, where the error complained of consists in the absence or the want of some essential thing or requisite, which is indispensable in such judicial proceedings,—required for the protection of individual rights, and to guard against abuses that may become obnoxious in the administration of public justice—as when there is want of such proceeding as was necessary to bring the party into court, and make him party to the record. * * * These facts are such as are of vital importance to give legal validity to the judgment, and the absence of which is regarded in such cases as a fatal error in the proceeding." While the decision of the court upon this question of fact is reviewable it must be remembered that the opportunities of the court below to come to a correct decision of the question, by reason of having witnesses before it in person, were perhaps better than

the opportunities here. Besides that the orders showing the appearance are presumed to be correct, and the burden was upon the party moving the correction to show that they were incorrect. This Court laid down the rule in *Smith* v. *Johnson,* 44 W. Va. 278, as follows: "When a defendant, by bill in equity, seeks to nulify a judgment at law obtained against him without service of process, upon unauthorized appearance by attorney, to succeed he must have a clear preponderance of evidence sustaining the allegation of his bill." Proceedings by motion and by bill in equity in such case are both direct and not collateral and the rule must be the same. *Wandling* v. *Straw,* 25 W. Va. 692, 703.

Coming now to the consideration of the evidence upon which the court below based its finding that there was no error in the orders showing the appearance of both of the defendants, it is found that Mr. Leftwich was a member of the firm of Sampselle, Leftwich & Co.; that he is the only member of said firm who testified; that neither W. B. Lance nor J. C. Lance testified; that while he says the co-partnership was dissolved in December, 1899, it appears that the co-partnership still existed on the 3rd day of May, 1900, after said orders had been entered, said bill in chancery having been sworn to on that day by J. C. Lance; that Mr. Goodykoontz testifies that at the term at which judgment was rendered the case passed over for several days upon the statement by Mr. Leftwich or some other member of the firm that they had forwarded a bill to the judge of the circuit court for the injunction, he being absent and a special judge then sitting; and that Mr. Sampselle of said firm was in court during most of the time and said that if the bill was not returned by the following morning judgment would have to go. This testimony of Goodykoontz is not contradicted by Mr. Leftwich or any other member of the firm. It is argued in the brief that unless the court should find that one of its regular attorneys is unworthy of credence his statement that he was not authorized to appear for W. B. Lance must be regarded as conclusive of the question. That is hardly a fair presentation of the matter for the reason, as stated, that Mr. Leftwich was only one of the firm and all through his testimony speaks on his own authority without undertaking to say what communication had passed between other members of the firm and W. B. Lance. This must be taken in connection with the positive testimony of

Mr. Goodykoontz that Mr. Sampselle, on the day before judgment was rendered announced in open court, without making any objection that W. B. Lance had not been served with process nor appeared, that if the bill was not returned by morning judgment would have to go. It does not appear why Mr. Sampselle was not called to contradict this statement. The notice of the motion to correct the orders was served four days after the judgment was rendered and it does not appear when Mr. Leftwich discovered the alleged errors and no complaint is made of the order entered on the very day on which judgment was taken showing an appearance of the "defendants" suggesting the non-residence of the plaintiff and requiring security for cost. That order says the appearance was special, but a special appearance for that purpose would be a submission to the jurisdiction of the court. *In Wandling* v. *Straw,* it is said: "If he appears to the action for any purpose except to take advantage of the defective execution or the non-execution of the process, he places himself precisely in the situation in which he would be, if process were executed upon him, and he thereby waives all objections to the defective execution of the process. If he appears for any other purpose, his appearance will authorize a personal judgment against him." No correction of this last order was asked for, and it is binding as to the other two orders. But if its correction had been sought its late date is a strong circumstance against the contention of the defendants. Thus taking the testimony all together, conflicting as it is, and the situation disclosed by the record, this Court would not be warranted in disturbing the finding of the lower court on this question.

Another assignment of error stands upon the following fact: The affidavit for attachment was made by W. B. Dunn, secretary of the company, and was sworn to by him before J. White Sheffly, a notary of Smyth County, Virginia. W. C. Sexton, clerk of the county court of said county, certifies that "W. B. Dunn whose name is signed to the foregoing writing, is a notary" etc., as appears from the copy or re-draft of the affidavit and authentication. This is doubtless a mere error of the attorney in attempting to supply the original paper. But the other affidavit in the case was made by Dunn, certified by Sheffly and authenticated by Sexton, and this not only proves that the insertion of Dunn's name in the clerk's certificate was

such error and that the original contained the name of Sheffly instead of that of Dunn, but also sufficiently establishes the official character of Sheffly for the purposes of this case. Both affidavits are parts of the record, and should be read together, and being so read, clearly show that Sheffly is a notary and that the use of the name of Dunn in the certificate of the clerk instead of that of Sheffly is a mere error in the supplied paper, and that it is no evidence of any defect in the original affidavit. There being no other objection to the affidavit it is held sufficient, and the judgment is affirmed.

*Affirmed.*