# CHARLESTON.

STATE *ex rel.* I. M. CONLEY *v.* SIMP THOMPSON

(No. 5543)

Submitted October 7, 1925.   Decided October 27, 1925.

1. JUSTICES OF THE PEACE—*County Court May Accept Resignation of Justice of Peace to Take Effect on Future Day and Make Prospective Appointment to Fill Vacancy to Occur at Time Fixed by Resignation.*

   Under the constitution and laws of this state, a county court, the appointing body, has authority to accept the resignation of a justice of the peace to take effect on a future day, and after such acceptance, to make a prospective appointment to fill the vacancy to occur at the time fixed by such resignation.   (p. 255.)

   (Justices of the Peace, 35 C. J. §§ 15, 18 [Anno.].)

2. SAME—*Justice of Peace After Resigning May Not Withdraw Resignation, Nor May County Court After Rights of Appointee Have Intervened Reconsider Prior Action and Permit Withdrawal of Resignation.*

   And after the acceptance of such resignation, and after the appointment of another to fill the vacancy to occur according to the terms of the resignation, the resigned officer has no right to withdraw his resignation, nor has the county court, after the rights of its appointee have intervened, the power to reconsider its prior action and permit the withdrawal of such resignation.   (p. .257.)

   (Justices of the Peace, 35 C. J. § 18.)

3. EVIDENCE—*Court With Power to Act in Particular Case Presumed to Have Acted Lawfully and Within Limits of Jurisdiction.*

   The presumption is that a court with power to act in a particular case acted lawfully and within the limits of its jurisdiction.   (p. 261.)

   · (Evidence, 22 C. J. § 68.)

4. JUDGMENT—*Judgment or Order of County Court, Unless Record Shows Want of Jurisdiction, Cannot be Collaterally Attacked.*

   ·The judgment or order of a county court, unless the record shows want of jurisdiction, cannot be collaterally attacked.   (p. 262.)

   (Courts, 15 C. J. § 418 ; Judgments, 34 C. J. § 823.)

   (NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Original proceeding in mandamus by the State, on the relation of I. M. Conley, against Simp Thompson.

*Writ awarded.*

*E. H. Butts* and *T. C. Townsend* and *England & Ritchie,* for relator.

*Price, Smith & Spilman, J. M. Woods,* and *James E. Greever,* for respondent.

MILLER, JUDGE:

Petitioner and relator, claiming to have been regularly and duly appointed by the County Court of Logan County to the office of justice of the peace for Logan District in said county, in the room and stead of Simp Thompson, resigned, is seeking by mandamus to compel the respondent to deliver to him the official docket, books and papers pertaining to and belonging to said office, or show cause, if any he can, why he should not do so.

It is conceded that to entitle petitioner to the relief sought, he must have shown a clear legal title to the office. The petition and alternative writ avers as a basis for petitioner's claim to the office and to the books and papers aforesaid, that on May 11, 1925, the respondent Simp Thompson resigned said office, the resignation being in writing and addressed to said court, and stating on the face thereof that it was to become effective on the first day of August, 1925; that on the 12th day of May, 1925, at a regular session of said court held at its regular meeting place, at the court house of said county, the court entered an order accepting said resignation; and that on the 19th day of May following, it entered another order appointing one Ernest Thompson to fill the vacancy caused by said resignation, until the next general election.

But the further averment of the writ is that, at a regular session of said court, held at the same place, on June 9, 1925, the court entered an order, as it had the legal right to do, rescinding and revoking the appointment of said Ernest

Thompson, who had not qualified nor given bond as such justice, and that by the same order and on the same day, said court appointed the petitioner to fill the said vacancy, who thereupon appeared before said court and executed the bond required by law, which was accepted and approved by said court, whereby he became and was entitled to exercise the rights of the office, and to receive and have possession of said books and papers. It is further averred, that notwithstanding his resignation and petitioner's appointment and qualification as such justice, respondent continues to exercise and usurp the powers of said office, and refuses to turn over to petitioner the books and papers pertaining thereto, and to which petitioner alleges he is entitled.

By way of defense respondent answers: First, that petitioner is not and never was properly appointed to said office, and does not at this time have the lawful title thereto, nor the right to said books and papers: Second, that on the 11th day of May, 1925, but under duress, he tendered his resignation, to take effect on August 1, 1925, but continued to perform the duties of his office, that on or about July 20, 1925, before his said resignation became effective, he withdrew the same, and that thereby said office never became vacant; and that he is now and continues to be the rightful incumbent, and is actually discharging the duties thereof.

That mandamus is the proper remedy in such cases is not controverted, so that it is unnecessary to consider further that question, quite elaborately discussed by counsel for relator. The only question on which the parties are in conflict are those involving relator's right and title to the office.

The first proposition of the respondent is that the constitution and laws of this state do not authorize a prospective appointment to fill a public office, and that the attempted appointment of Ernest Thompson, and the subsequent revocation thereof, and the attempted appointment by the county court of the relator, were therefore abortive and of no legal effect as a conference of title to the office upon him. It is argued that while section 30 of article 8 of the Constitution, and section 9 of chapter 4 of the Code, authorizes the county court to appoint to a vacancy, the vacancy in the office must

have actually occurred before such power becomes consummate; wherefore the action of the county court upon which relator predicates his claim to the office was void and wholly without legal effect. For this proposition counsel for respondent rely mainly on *Biddle* v. *Willard, Governor,* 10 Ind. 62, and *State* v. *Harrison* (Ind.), 3 Am. St. Rep. 663. The first case involved the validity of an election by the people to fill the vacancy to occur by the resignation of a judge, who had resigned to take effect at a day subsequent to the date of the election, and before the vacancy had actually occurred. The second involved the right of an appointee of the governor to an office held by the appointment of the general assembly, which had met and adjourned without having elected a successor to the then incumbent, whose term of office had expired by limitation before the adjournment of the general assembly. It was decided, in view of the particular provisions of the constitution and statutes of Indiana relating to the subject, that at the times of the election and the appointment vacancies had not occurred which could be filled thereby. Upon the principle of these decisions it is contended that the prospective appointment of relator by the county court before any vacancy had in fact occurred, was not only voidable but actually void, and conferred no title to the office on him. The position taken by counsel for respondent is that, as our constitution and statute, similar it is contended to the Indiana constitution and statute, only empowered the appointing power to appoint for a vacancy, and that until the vacancy has occurred, the power is non-existent, and the attempt to exercise the power prospectively is without any legal effect. Whether the Indiana cases are proper constructions of the laws of that state is not for us to decide; but we do not think our constitution and statutes should be given like interpretation. It is true that the authority of the county court is to fill a vacancy; and it is contended that as the common-law rule which required one elected or appointed to an office to serve, no longer obtains in this state, and that the right to resign an office is without the let or hindrance of any authority, and the power to refuse a resignation does not

exist, the act of acceptance by the county court had no potential effect, and that its prospective appointment of relator and his qualification before the resignation of the prior incumbent became consummate was void and of no effect.

As suggested in the argument, we thing we may take judicial notice that it has been the custom in this state for elective or appointive officers to qualify by taking the required oath and giving bond before the beginning of their terms of office. And conceding that the county court has no power to decline a resignation of a justice of the peace, and that its acceptance of such a resignation would add nothing to the effect of the resignation, nevertheless, as it was necessary that the resignation should be made to the appointing authority, the court had the right by acceptance to recognize the act of resignation, and that there might be no hiatus in the office, and for convenience and the good of the public, to anticipate the time of the vacancy which was sure to occur at the time designated, by appointing another to the office, effective at that date. It is true that section 6 of article 4 of the Constitution, and section 2 of chapter 7 of the Code, with the exceptions mentioned, provide that all officers elected or appointed shall continue in office until their successors are elected and qualified. This would save the hiatus that might occur; but as the right to resign is recognized, it would seem to be in consonance with good public policy that a resignation should be made to and accepted by the appointing power far enough in advance to enable it to make a proper appointment and the appointee to qualify. Such appointment would not be proper in all cases without a resignation, as where a vacancy was about to occur by death or removal from office, for a vacancy could not then be anticipated by a prospective appointment. There would be no definite and certain time in such a case when the vacancy would occur.

The proper rule in cases like the one we have here, is that enunciated in *State ex rel. Whitney* v. *Van Buskirk*, 40 N. J. Law, 463, and *State ex rel. Eberle* v. *Clark*, 87 Conn. 537. The facts in the New Jersey case were very similar to those in the case at hand. The chief of police of the city of Bayonne ten-

dered to the mayor his resignation to take effect on a future day named. The mayor presented this to the board of councilmen, with his approval and acceptance, and requested theirs. The board, at the same meeting, received and accepted the resignation, and appointed relator to the office. After this and before the day his resignation was to take effect, the board, at a subsequent meeting, undertook to re-reconsider their previous action, and to allow the defendant to withdraw his resignation; and the question presented was whether the board had the power to do this after the intervening rights of the relator had accrued; and it was held that they had no such power; that the prior action of the board should stand as a finality. It was held, however, that if the rights of the relator had not intervened, the board, having the power of appointment, might have revoked their previous action and permitted defendant to withdraw his resignation; citing Dillon on Mun. Corp. § 163. It was contended in that case, as is true in this, that at the time of the appointment a vacancy had not actually occurred; but conceding this, the court said that this was true whether the resignation had been accepted or not: ''But,'' said the judge delivering the opinion, ''I am far from thinking that a prospective resignation, tendered and accepted, is without legal validity.'' There is no question in this case but that the county court had the power to appoint to office. It was held in the New Jersey case, that an appointive body with such power may anticipate a vacancy and fill the office by a prospective appointment in consonance with an almost uniform course of practice for years in that state. And referring again to Biddle v. Willard, supra, the court said that that case went off on the construction of local statute, as was also the fact with respect to the cases cited by opposing counsel. in the case of State ex rel. Eberle v. Clark, supra, it was decided that the governor with power given by statute to fill a vacancy occurring by the resignation of a police judge was not bound to wait until the vacancy, sure to occur, actually existed, before designating his appointment, but might anticipate that event, provided his own term of office would not expire before the appointment took effect. The principles of

these cases are affirmed by the text writers on the subject. Throop on Public Officers, secs. 91, 435; Mechem's Public Offices and Officers, sec. 133. The specific proposition affirmed in the New Jersey case and particularly applicable here, was that: "A prospective appointment to public office, made by a body which as then constituted is empowered to fill the vacancy when it arrises, is, in the absence of express law forbidding it, a legal appointment, and vests title to the office in the appointee." In *Smith* v. *Dyer,* 1 Call 562, it was contended as here, that the county court could not appoint to an office to take effect in anticipation at a future date, as the King of England could, because the constitution requires an actual vacancy, and as there was no vacancy at the time of the appointment, it conferred no right. The court, however, held the appointment valid.

Further on the question of respondent's attempt to withdraw his resignation, and his rights, if any, thereon. It is admitted that this action on his part was not undertaken until after the acceptance of his resignation by the county court and the appointment and qualification of the relator, and that it was made by letter addressed to the court and handed to the president when the court was not in session, only a day or two before his resignation became effective. If, as we hold, the court had the power to accept his resignation, and make a prospective appointment, and did make an effective appointment of relator, it was too late for him to withdraw his resignation after his successor had been duly appointed and qualified. The authorities hold that while before acceptance of his resignation by the appointing power, an officer resigning may withdraw the same, and may do so afterwards with the consent of that authority if no new rights have intervened, he can not do so after acceptance. *Bunting* v. *Willis, Judge,* 27 Gratt. 145; *Saunders* v. *O'Bannon,* 27 Ky. L. Rep. 1166; *Murry* v. *State.* 115 Tenn. 303; *State ex rel. Kirtley* v. *Augustine,* 113 Mo. 21; *Pace* v. *People,* 50 Ill. 432; *State ex rel. Lockhart* v. *Hauss,* 43 Ind. 105; *Nourse* v. *Clarks,* 3 Nev. 566; *Gates* v. *Delaware County,* 12 Iowa, 405. In the case of *Coleman* v. *Sands,* 87 Va. 689, the majority opinion was that a resignation was not complete until acceptance by the

board authorized to fill the vacancy. To this proposition Lacy and Richardson, Judges, dissented, holding that the resignation was complete as soon as made, and that acceptance thereof is not necessary to make it complete and operative. But it was conceded that the common-law rule prevailing here and in other states where the subject is not regulated by statute, is that it takes acceptance by the appointing power to make the resignation entirely complete. Under our constitution and laws an officer holds over until his successor is elected and qualified, and when the public interests demand, he may even be compelled to continue in office, that a hiatus therein may not be created. *State ex rel. Westfall* v. *Blair,* 87 W. Va. 564.

In the case of a justice of the peace the county court is the only body in whom the power to fill a vacancy is lodged, and consequently the only body authorized to accept resignations and fill vacancies by *ad interim* appointment. And the common-law rule, not affected by statute in this respect, is that the body or person empowered to appoint to a vacancy is the body or person to accept resignations. 22 R. C. L. 558, 559, secs. 261, 263; *State* v. *Popejoy,* 165 Ind. 177; *State* v. *Huff,* 172 Ind. 1; 5 Ann. Cas. 687; *State* v. *Augustine, supra; State* v. *Hauss, supra.* Where the statute is silent on the subject, says a text writer, a resignation should be made to the appointing power. Throop on Public Officers, 400, sec. 408, citing *Van Orsdall* v. *Hazard,* 3 Hill (N. Y.) 243, and *Edwards* v. *United States,* 103 U. S. 471.

Another proposition relied on to defeat the writ is that the county court first appointed Ernest Thompson, whom the subsequent order of the court rescinding its previous order says had failed to qualify. It is contended that the first appointee had until the day his appointment was to become effective, to take the oath of office and give the required bond. And it is asserted that the appointment of Ernest Thompson was made at a regular term of the court, and the attempted appointment of relator at a subsequent special term, without notice and when the court was functus officio, quoad that appointment, having exhausted its power by the first appointment, and that for both reasons relator is without title

to the office.  It is not controverted that anything done at a special session unless the subject matter was covered by notice would be void; but the petition of relator alleges that his appointment was made at a regular term of the court, June 9, 1925, and his special replication to respondent's return to the writ also denies that the action of the county court was at a special term.

.On the first proposition it suffices to reply, we think, that Ernest Thompson is not here asserting title to the office. There may be facts and circumstances not disclosed by the record which showed to the court that he was disqualified or declined the office and refused to qualify, calling for the exercise by the county court of its appointing power to substitute another person to fill the vacancy.  Certainly the court, under such circumstances, would have the power to substitute another person to the office; else it would go empty.  The presumption is that the court acted lawfully and within its jurisdiction.

On the proposition that the appointment of the relator was made at a special term of the court, not covered by the notice thereof, and therefore void, the record of the court respecting that appointment shows that it was done at a regular term of the court.  And unless the order of the county court entered January 5, 1925, at a regular term, provided for regular terms beginning on the first Monday of each month, is absolutely void, there can be no doubt that the appointment of the relator occurred at a regular term, when the court might transact any lawful business.  The theory of respondent's counsel is based on his construction of section 22 of article 8 of the Constitution and the statute relating to county courts and providing in the last clause thereof: "It shall hold four regular sessions in each year, and at such times as may be fixed upon and entered of record by the said court. Provisions may be made by law for holding special sessions of said court."  The statute, section 6 of chapter 39 of the Code, follows the Constitution.  The argument presented is that properly construed the constitution forbids the holding of more than four regular sessions each year; which we think is a non sequitur.  The provision is mandatory that at least

four terms shall be held. Why so many? Evidently the people who adopted the constitution thought that at least that number would be required to transact with convenience the public business. The constitution of 1872, as it originally stood, provided for six terms, but by the amendment four terms were provided for. Whether, under the constitution, the court can appoint more than four regular terms, has never been judicially determined, but as there is no limitation upon the number of special terms that may be held, we do not see upon what reason more than four regular terms may not be advisable and proper, unless prohibited or limited by the organic law. Section 1 of chapter 28-A, Barnes' Code 1923, providing for a regular term of the county court on the second Tuesday in August, and section 2 of the same chapter, providing for the adjournment thereof until the fourth Monday in August, it seems to us, amount to legislative construction, that the court is not limited to four regular terms. Besides, we find by reference to the West Virginia Legislature Handbook, published under authority of the legislature, that a number of the county courts have appointed regular terms to be held monthly. In Ohio County regular terms are fixed for every week day at 10:30 A. M. Provisions of the constitution and statutes concerning the times and places of holding courts should be construed liberally. 1 Wells on the Jurisdiction of Courts, sec. 302. But limiting county courts to four regular terms, where regular terms have been provided for monthly, and held as provided, which four of the twelve are to be regarded as regular terms? Are all to be regarded unlawful? If not, which are to be treated as unlawful, and which are the lawful ones?

The record certified here shows that the action of the court appointing relator was taken at a regular term, and this, *prima facie* at least, ought to suffice. The presumption is in favor of the jurisdiction of the court and the regularity of its proceedings. The rule applicable to courts of general jurisdiction, that their judgments will be presumed to be in accordance with their jurisdiction and can not be collaterally attacked unless the record shows want of jurisdiction, applies to courts of limited or special jurisdiction. *Shank* v.

*Ravenswood,* 43 W. Va. 242; *Cecil* v. *Clark,* 44 W. Va. 659.

So that the appointment of relator is not subject to collateral attack by respondent, and as he never made application to the court to have set aside or annulled its action in the appointment of relator, we are not called upon to consider the question of the regularity of his appointment.

We have carefully considered the subject of duress, to which respondent attributes his resignation, and his right to withdraw his resignation. He never presented that question to the county court, certainly not until after relator's rights attached; and we fail to find anything in the record justifying the conclusion that he was coerced or put under duress by the county court, or any member of it, or by any of the federal officers referred to. Quite the contrary. The record satisfies us that he and his counsel engaged in an effort to bargain with the federal district attorney for his release from criminal prosecution, and themselves proposed terms to him, but which were never acted on or accepted; and the record shows that these criminal proceedings remain pending against respondent.

Our conclusion is to award the writ.

*Writ awarded.*